CHARLES L. BARTLETT *v.* BOSTON GAS LIGHT COMPANY.

Suffolk. March 23. — May 8, 1875. AMES & DEVENS, JJ., absent.

The owner of a house cannot maintain an action against a gas light company for an injury to his reversionary interest, caused by the negligence of the company in permitting gas to escape into the house, if the immediate cause of the injury was the explosion of the gas by the negligence of a tenant in possession of the house.

In an action against a gas light company for an injury to the plaintiff's house, caused by an explosion of gas in the house escaping from the main pipe in the street, the defendant put in evidence, on the question whether its servants were negligent in the precautions taken after the leak was discovered, the following regulations given to its servants : "Every person in the employ of the company is directed to give to the office the earliest information possible of any gas leak, whether in streets

buildings or public lamps." " When the person sent to attend to such case arrives, he is authorized to shut off the gas, if in his judgment it is necessary, and he must always give such instructions to the occupant of the premises as will, if followed by him, preserve the property from injury, and protect the persons of the household from accident." The defendant then offered to show that the direction was intended and understood to apply only to shutting off gas from houses, and that only three persons had authority to shut off gas from the streets, and requested an instruction to the jury that the officers of the company were not precluded by the regulations from showing that " shutting off " related only to shutting off at the meter. The judge declined so to rule, and instructed the jury that the company was bound by the natural import of the words used in the regulations, but was not thereby prevented from showing by evidence that the course of its business and its rules with regard to shutting off gas were not precisely such as were described in the printed regulations relating thereto. *Held*, that if the terms of the regulations did not require the construction that the authority therein conferred to shut off the gas applied only to shutting it off at the meter, the evidence offered by the defendant was competent to remove the latent ambiguity, and that the instruction given was insufficient.

TORT for injuries to the plaintiff's reversionary interest and estate in a house on Columbus Avenue, Boston, caused by an explosion of gas. At the trial in the Superior Court before *Bacon*, J., the following facts appeared:

At the time of the accident, the house was occupied by Isaac Greensfelder as a tenant to the plaintiff, under a written lease. In consequence of a leak in the street pipe, the gas worked through the soil into the plaintiff's house, and Greensfelder, during the night, smelling gas, took a candle and went into the basement of the house; and on arriving there, the gas ignited from the candle, and the explosion took place, causing the damage for which the plaintiff now seeks to recover. It was contended that the defendant was negligent in allowing the gas to accumulate upon the premises, and in failing to give notice to the occupants of the house, after the leak was discovered.

The defendant requested the judge to instruct the jury that the company was not liable if Greensfelder was negligent and his negligence contributed to the accident. The judge declined so to rule, and instructed the jury that if they found that by the negligence of the defendant company explosive gas was allowed to accumulate in and under the house of the plaintiff, then, al though the tenant by his negligence ignited the gas, the defendant would be liable; and that if the tenant had intentionally set fire to the gas, the plaintiff could recover for the negligence of

the defendant in allowing the gas to accumulate upon the premises.

The defendant offered in evidence certain printed regulations which were given to all the employees of the company for their guidance.   Among the other instructions contained in these regulations in cases of leaks, were the following:  " Every person in the employ of the company is directed to give to the office the earliest information possible of any gas leak, whether in streets, buildings or public lamps.   Complaint of leakage must receive attention in preference to all other complaints."   " When the person sent to attend to such case arrives, he is authorized to shut off the gas, if in his judgment it is necessary, and he must always give such instructions to the occupant of the premises as will, if followed by him, preserve the property from injury and protect the persons of the household from accident."   It appeared that the gas could be shut off inside the houses at the meter, and that there were valves at certain places in the streets where gas could be shut off from certain districts.

The defendant then offered evidence to show that the direction as to shutting off in the printed rules was intended and understood to apply only to shutting off from the houses, and that only three persons had authority to shut off gas from the streets ; and requested the judge to instruct the jury that, in considering the question as to the regulations of the company in case of leakages, the fact that the printed regulations contain directions as to " shutting off the gas " did not preclude the officers of the company from showing that " shutting off " related only to shutting off at the meter ; that the point was, whether any other persons had authority to shut off gas from the street, except the three persons above named.

The judge declined to give the instruction in the language requested, but instructed the jury as follows :  " The printed regulations which were put in must be taken, so far as the phrase ' shut off the gas ' is concerned, according to the natural import of the words.   There is nothing which would authorize the company to say, ' We have established printed regulations, which, according to the natural import of the words, mean one thing, but we intend another.'   That the law does not permit any party to do, who expresses any intent or purpose in writing.   He is held to the

natural import of his words. This rule, however, does not pre-
vent the company from showing by evidence that the course of
their business, and their rules with regard to shutting off gas, are
not precisely such as are described in the printed regulations relat-
ing to shutting off; it is not, in other words, a thing which binds
them ; but they are bound to present to you all that they do, and
how they do it, as bearing upon the question whether they were
in the exercise of due care at this time."

The jury returned a verdict for the plaintiff ; and the defend-
ant alleged exceptions.

*R. M. Morse, Jr. & C. P. Greenough*, for the defendant.

*N. Morse & H. H. Currier*, for the plaintiff. 1. The plaintiff
is entitled to recover, even though the tenant was negligent.
A landlord is not liable for the negligence or wrongful acts of his
tenant, for over such acts the lessor has no control. The tenant
is not the agent or servant of the lessor in any sense. *Murray* v.
*Richards*, 1 Allen, 414, 416. *Fiske* v. *Framingham Manuf. Co.*
14 Pick. 491. *Rich* v. *Basterfield*, 4 C. B. 783, 801. *Earle* v.
*Hall*, 2 Met. 353, 360. *Leonard* v. *Storer*, 115 Mass. 86. In
order to render a person liable for the negligent act of another, it
must appear that the act is done by one acting by such person's
command or request, or by one over whose conduct he had con-
trol, whose operations he might direct, whose negligence he might
restrain. *Hilliard* v. *Richardson*, 3 Gray, 349. If the lessor is
bound to keep the premises in repair, he is then directly liable to
third persons for injuries received in consequence of his neglect to
repair, to avoid circuity of action. *Lowell* v. *Spaulding*, 4 Cush.
277. But this is no exception to the rule that a lessor is
not responsible for his tenant's negligence, for in such case the
lessor is simply held responsible for his own negligence. It has
been expressly held that the negligence of a tenant is no defence
to an action brought by a reversioner against a third party for
injuries to the reversion. *Egremont* v. *Pulman*, Mood. & Malk.
404. *Bell* v. *Twentyman*, 1 Q. B. 766. If the defendant was
negligent, it is immaterial that the act of the tenant in igniting
the gas contributed to the accident, although his negligence was
the proximate cause of the injury. The main or efficient cause
was the negligence of the defendant in allowing the gas to accu-
mulate upon the premises, and failing to use proper precautions to

prevent the explosion ; and for this negligence the defendant is liable. *Metallic Compression Co.* v. *Fitchburg Railroad*, 109 Mass. 277. *Burrows* v. *March Gas Co.* L. R. 5 Ex. 67 ; and L. R. 7 Ex. 96. *Lane* v. *Atlantic Works*, 111 Mass. 136. *Hawks* v. *Northampton*, 116 Mass. 420. If the defendant was negligent, it is equally liable whether the consequences of this negligence could be foreseen or not. *Smith* v. *London & South Western Railway*, L. R. 6 C. P. 14. Nor is it material, as affecting the defendant's liability, that the plaintiff may have had a remedy both against the defendant and the tenant. Where there are two tortfeasors, the party injured may proceed against either. *Burrows* v. *March Gas Co.*, *supra*. *Lane* v. *Atlantic Works*, *supra*. *Gillett* v. *Western Railroad*, 8 Allen, 560.

2. It was not competent for the defendant to explain the phrase " shut off the gas," in the printed regulations, by parol evidence. The judge rightly instructed the jury, that so far as the phrase " shut off the gas " was concerned, it must be construed according to the natural import of the words ; and the other instructions were sufficiently favorable ; for under these instructions the defendant was enabled to show that only three persons had authority to shut off gas from the streets, which was all it asked to show : and there was no ground of exception.

WELLS, J. The injury to the plaintiff's house, of which he complains, resulted from the explosion of gas ignited therein by his tenant. The ruling at the trial was that if " this explosive gas was allowed to accumulate in and under the house of the plaintiff " by the negligence of the defendant company, then, although the plaintiff's tenant " by his negligence ignited this explosive substance, the defendant would be liable."

The negligence of the defendant consisted either in permitting a leak to occur through a defect in the main pipe in the street in front of the plaintiff's house, or in neglecting to remedy the difficulty with sufficient promptness after it was discovered.

Assuming that liability for such negligence would extend to injuries occasioned by the accidental ignition of gas which, after escaping from the pipes, had found its way through the soil or otherwise into a neighboring house ; and even that it would include injurious results to which the misconduct or negligence of a stranger contributed, we are opinion that a tenant, in the actual

and legal possession of the property injured, stands in such relation to it as to require the application of a different rule when the injury is due to his misconduct or negligence, as one of severaɪ causes by the concurrenɔe of which it was produced. He is intrusted by the owner with the charge and contrd of the property. He is, *pro hac vice*, the owner.

The ruling at the trial was substantially that no degree or kind of negligence on the part of the tenant would affect the plaintiff's right to recover. This we think was erroneous. If the tenant, upon discovering the presence of gas, in large quantity, in the house, neglected to give notice to the agents or servants of the defendant, or to take reasonable precautions to remove or exclude the gas, and recklessly brought the flame of a candle in contact with it, thus bringing about injurious effects which would not have followed but for such reckless or negligent conduct on his part, the defendant ought not to be held responsible for those results. *Hunt* v. *Lowell Gas Light Co.* 1 Allen, 343. *Sherman* v. *Fall River Iron Works*, 2 Allen, 524. Whatever of care was requisite for the protection of the premises under the circumstances was due from the occupant. The defendant as well as the plaintiff had a right to expect and require it of him. The measure of duty and the extent of liability of the defendant in respect to the property exposed to injury are not affected by the consideration whether the occupant who has charge of it is in fact owner in fee or tenant for years or at will. If the intervening misconduct of the occupant produced the explosion which was the immediate cause of the injury to the building, the plaintiff cannot charge the legal responsibility for that result upon the original negligent act or omission of the defendant.

This conclusion does not rest upon the ground of any personal relation of agency between the landlord and his tenant, but upon the relation of the latter to the property as having the present control and charge of it, and therefore the one upon whom is devolved the duty to take reasonable care to prevent damage from such causes. The ground upon which it is sought to charge the defendant is the obligation imposed by law upon every one, in the use of his own property and conduct of his own business, to exercise reasonable care not to injure the persons or property of others. The responsibilities growing out of this obligation are

modified, and the liabilities arising from its disregard somewhat limited, by the correlative obligation, which rests upon every one, to use reasonable care to protect his own property against what may cause injury to it, and to prevent unnecessary damage. *White* v. *Winnisimmet Co.* 7 Cush. 155, 161. The plaintiff's right to recover is subject to that modification and limit, and he cannot enlarge his right by intrusting the control of the property, and thus the obligation of due care, to another.

Upon the question whether the defendant's servants were negligent in respect to the taking of proper precautions to prevent injurious consequences from the leak, the regulations of the defendant, issued for the direction of its servants, were introduced. Among these regulations was one which authorized its servants, or such one as should be sent to attend to the difficulty, to shut off the gas, if in his judgment it should be necessary, with a precaution that " he must always give such instructions to the occupant of the premises as will, if followed by him, preserve the property from injury and protect the persons of the household from accident." If this precaution did not of itself require the regulation to be construed as applying only to shutting off the gas from the separate houses, there was a latent ambiguity which it was competent to remove by the parol evidence offered for that purpose. The instructions upon this point did not meet the requirements of the case.　　　　　　　　　 *Exceptions sustained.*